O

# United States District Court
## Central District of California

FIRST-CITIZEN BANK & TRUST CO.,

Plaintiff,

v.

K & H CARE LLC et al.,

Defendants.

Case № 2:25-cv-07480-ODW (PDx)

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [21]**

## I.   INTRODUCTION

Plaintiff First-Citizen Bank & Trust Company initiated this action against Defendants K & H Care LLC ("K&H"), Care Management Consulting Inc. ("CMC"), MD Home Detox Consulting, Inc. ("MD"), West Side Vista Properties, LLC ("West Side"), Jose Hernandez Jr. ("Hernandez"), and the Jose Hernandez and Katherine Hernandez Revocable Trust ("Trust") for breach of contract and tortious misrepresentation. (Compl. ¶ 1, Dkt. No. 1.)  Plaintiff now moves for entry of default judgment against Defendants pursuant to Federal Rule of Civil Procedure ("Rule") 55. (Mot. 1, Dkt. No. 21.)  For the reasons that follow, the Court **GRANTS** the motion.[1]

---

[1] After carefully considering the papers filed in support of the motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

Plaintiff is a financial institution that loaned money to K&H in the form of a revolving line of credit ("LOC").  (Compl. ¶ 11.)  In return, K&H agreed to repay the loan plus interest, expenses, and fees.  (*Id.*)  K&H is a limited liability company whose only members are Hernandez and Katherine Hernandez.  (*Id.* ¶ 3.)  CMC, MD, West Side, the Trust, and Hernandez (collectively, "Guarantors") each unconditionally guaranteed K&H's full performance under the LOC.  (*Id.* ¶ 12; Decl. Nicole Roberson ISO Mot. ¶ 2, Ex. A ("Business Loan Agreement" or "BLA") 3, Dkt. Nos. 21-1, 21-2.)  The ultimate maturity date on the LOC was June 1, 2025.  (Compl. ¶ 13.)  However, Defendants did not pay off the loan and, as of June 2, 2025, Defendants owed $94,258.01 in principal, plus interest, fees, and costs.  (*Id.*)  To date, Defendants have not paid off the LOC.  (*Id.* ¶ 14.)

Separately, in May 2020, Hernandez and Katherine Hernandez opened a direct deposit account with Plaintiff under West Side's name (the "West Side Account").  (*Id.* ¶ 17.)  Similar to K&H, West Side is a limited liability company whose only members are Hernandez and Katherine Hernandez. (*Id.* ¶ 6.)  In March 2025, the West Side Account had a balance of approximately $32,000.  (*Id.* ¶ 19.)  On March 7, 2025, Hernandez went to one of Plaintiff's retail branches and personally withdrew $30,010 in cash from the West Side Account.  (*Id.* ¶ 20, Ex. E ("March 7 Withdrawal Authorization"), Dkt. No. 1-1.)  He then falsely reported the withdrawal as fraudulent, causing Plaintiff to credit $30,010 back to the West Side Account (*Id.* ¶¶ 21, 23.) Then, on March 17, 2025, Hernandez again went to one of Plaintiff's retail locations and personally withdrew $32,566.08.   (*Id.*  ¶ 24, Ex. F ("March 17 Withdrawal Authorization"), Dkt. No. 1-1.)  Plaintiff subsequently discovered that Hernandez's fraud report was false and debited $30,010 to the West Side Account, resulting in the account being overdrawn. (*Id.* ¶ 25.)

After Plaintiff unsuccessfully attempted to negotiate a payment plan with Defendants for the amounts owed and the overdraft, it filed this action.  (*See* Decl. Jeff

Grant ISO Mot. ("Grant Decl.") ¶ 3, Ex. A ("Emails re Payment Plan"), Dkt. Nos. 21-10, 21-11; Compl.)  Plaintiff asserts seven causes of action: (1) breach of the LOC agreement against all Defendants; (2) breach of the deposit agreement against West Side; (3) breach of implied contract against West Side; (4) intentional misrepresentation against Hernandez; (5) negligent misrepresentation against Hernandez; (6) money had and received against all Defendants; and (7) unjust enrichment against all Defendants.  (*Id.* ¶¶ 26–63.)

Plaintiff served all Defendants, but they have not appeared or defended this action. (Proofs Serv., Dkt. Nos. 10–15.)  At Plaintiff's request, the Clerk entered each Defendant's default. (Defaults, Dkt. Nos. 19, 24.)  Now, Plaintiff seeks entry of default judgment against Defendants for the amounts due, plus interest and late fees, and also contractually provided attorneys' fees and costs.  (Mot. 1)

## III.   LEGAL STANDARD

Rule 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a).  However, before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rules 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2.  Even if these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc.*, *v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)).  Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (collecting cases).

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true," except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  The court need not make

3

detailed findings of fact when entering default judgment, except as to damages. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

## IV.   DISCUSSION

Plaintiff moves for entry of default judgment against Defendants and seeks to recover damages, interest, and fees in the amount of $122,575.79, and attorneys' fees and costs. (Mot. 1, 10–12.) Plaintiff satisfies the procedural requirements for default judgment, establishes that entry of default judgment against Defendants is substantively appropriate, and demonstrates that its requested relief is reasonable and warranted.

### A.   Procedural Requirements

Local Rule 55-1 requires that the movant establish: (1) when and against which party default was entered; (2) the pleading on which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). In turn, Rule 55(b)(2) requires written notice on the defaulting party if that party "has appeared personally or by a representative."

Plaintiff satisfies the procedural requirements necessary for obtaining a default judgment. On October 2, 2025, the Clerk entered default against Defendants as to Plaintiff's Complaint. (*See* Defaults.) Plaintiff's counsel submits declaration testimony that Hernandez, the only individual defendant, is not a minor or incompetent person and that the Servicemembers Civil Relief Act does not apply. (Grant Decl. ¶¶ 4–6.) Finally, service of the Motion is not required because Defendants have not appeared. Thus, Plaintiff satisfies the procedural requirements for entry of default judgment.

### B.   *Eitel* Factors

In considering whether entry of default judgment is warranted, courts consider the "*Eitel* factors": "(1) the possibility of prejudice to the plaintiff"; "(2) the merits of plaintiff's substantive claim"; "(3) the sufficiency of the complaint"; "(4) the sum of money at stake"; "(5) the possibility of a material factual dispute; "(6) whether the default was due to excusable neglect"; and (7) the strong policy favoring decisions on

the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citation modified). Thus, the Court considers these factors first.

### 1.       *Second & Third* Eitel *Factors*

The second and third *Eitel* factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original). Although well-pleaded allegations are taken as true, "claims which are legally insufficient[] are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Plaintiff asserts seven causes of action. (Compl. ¶¶ 26–63.) However, the Court need only reach three of them for Plaintiff to obtain complete relief: (1) breach of the LOC by all Defendants; (2) breach of the deposit agreement by West Side; and (3) intentional misrepresentation by Hernandez. (*Id.* ¶¶ 26–37, 44–50.) As the remaining counts are either duplicative or asserted in the alternative, and the Court finds that Plaintiff sufficiently pleads these three, the Court declines to reach the remainder.

First, Plaintiff "state[s] a claim on which [it] may recover" against all Defendants for breach of the LOC. *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). A cause of action for breach of contract requires (1) a valid contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). Plaintiff alleges it and K&H entered a valid agreement for a business loan and promissory note, Plaintiff performed its obligations by extending credit and honoring extensions through the June 1, 2025 maturity, and K&H breached the agreement by failing to pay the outstanding balance at maturity despite demand, thereby damaging Plaintiff in the amount unpaid, plus interest and late fees. (Compl. ¶¶ 11–14, 26–31; Roberson Decl. ¶¶ 2, 4–5, 17.) Further, Plaintiff alleges facts establishing that CMC, MD, West Side, the Trust, and Hernandez

executed commercial guarantees of K&H's obligations and failed to satisfy K&H's indebtedness. (Compl. ¶¶ 11–14, 26–31; Roberson Decl. ¶ 3.) Thus, Plaintiff states a claim for breach of the LOC against all Defendants.

Second, Plaintiff states a claim on which it may recover against West Side for breach of the West Side Account deposit agreement. Plaintiff alleges the West Side Account deposit agreement is a valid contract governing the West Side Account; Plaintiff performed its obligations, including by recrediting funds in reliance on Hernandez's report of unauthorized withdrawal; and West Side breached the agreement by overdrawing the account and failing to pay the resulting overdraft, thereby damaging Plaintiff in the principal amount of $30,010, plus interest and fees. *See Careau*, 222 Cal. App. 3d at 1388; (Compl. ¶¶ 17–25, 32–37; Roberson Decl. ¶¶ 6, 9–15, 17). Thus, Plaintiff states a claim for breach of the West Side Account deposit agreement against West Side.

Third, Plaintiff states a claim on which it may recover against Hernandez for intentional misrepresentation. The elements of an intentional misrepresentation claim are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997). Hernandez personally withdrew $30,010 from the West Side Account, and then falsely reported that withdrawal as unauthorized to induce Plaintiff to re-credit the funds. (Compl. ¶¶ 20–21, 23.) Plaintiff justifiably relied on Hernandez's false report when it re-credited the $30,010. (*Id.* ¶ 23.) Hernandez then personally withdrew more than $32,000 from the account before Plaintiff discovered his falsity and reversed the re-credit. (*Id.* ¶¶ 24–25.) Hernandez damaged Plaintiff with his intentional misrepresentation in the amount of the outstanding $30,010 overdraft. (*Id.* ¶¶ 17–25, 44–50; Roberson Decl. ¶¶ 9–17). Thus, Plaintiff states a claim for intentional misrepresentation against Hernandez.

As Plaintiff states these valid claims on which it may recover, the second and third *Eitel* factors favor default judgment.

### 2.	Remaining Eitel *Factors*

On balance, the remaining *Eitel* factors also weigh in favor of entering default judgment against Defendants.  To begin, the first and fourth *Eitel* factors—possibility of prejudice and sum of money at stake—favor default judgment.  *See Eitel*, 782 F.2d at 1471–72.  Plaintiff would suffer prejudice absent default judgment because it would otherwise have no recourse for Defendants' breaches and fraudulent misrepresentation.  Further, as discussed below, the sum of money Plaintiff seeks is directly proportionate to Defendants' misconduct.  *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (assessing "whether the recovery sought is proportional to the harm caused by defendant's conduct").

The fifth and sixth factors—possibility of dispute and excusable neglect—also weigh in favor of entering default judgment.  *See Eitel*, 782 F.2d at 1471–72.  The Court accepts Plaintiff's allegations as true on default, and Defendants may not now "challenge the accuracy of the allegations in the complaint." *Landstar*, 725 F. Supp. 2d at 922.  Plaintiff supports its claims with evidence demonstrating Defendants' misconduct, and the Court's review of the record reveals "no factual disputes . . . that preclude the entry of default judgment."  *Id.*  Further, Plaintiff submits evidence reflecting Defendants' knowledge of this action and nothing in the record suggests Defendants' failure to appear is a result of excusable neglect.

Finally, the seventh factor—policy favoring decisions on the merits—always weighs in a defaulting defendant's favor.  *See Eitel*, 782 F.2d at 1472.  However, because Defendants' failure to appear in this action prevents the Court from reaching a decision on the merits, this factor does not prevent the Court from entering judgment by default.  *See Duralar Techs. LLC v. Plasma Coating Techs., Inc.*, 848 F. App'x 252, 255 (9th Cir. 2021) (affirming entry of default judgment where all factors except the seventh weighed in the plaintiff's favor).

In sum, the *Eitel* factors weigh in favor of entering default judgment against Defendants on Plaintiff's Complaint.

## C.     Requested Relief

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Here, Plaintiff seeks to recover contract damages with interest and fees, and contractual attorneys' fees, and costs. (Mot. 10–12.)   The relief Plaintiff seeks is consistent with that requested in the Complaint and is thus permissible.  (*See* Compl. ¶¶ 31, 37, 48–49, Prayer.)

Additionally, once liability is established through a defendant's default, a plaintiff must demonstrate that the requested relief is appropriate.  *Geddes*, 559 F.2d at 560.  Plaintiffs cannot rely solely on allegations to establish damages, for "even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages."  *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002).

### 1.     *Principal, Interest, and Fees*

For breach of the LOC, Plaintiff seeks to recover from Defendants $89,509.43 in principal, $3,025.24 in accrued interest, and $31.12 in late fees, for a total of **$92,565.79**.  (Mot. 2; Roberson Decl. ¶¶ 5, 17.)  For breach of the West Side Account deposit agreement, Plaintiff seeks to recover **$30,010.00**, the amount the West Side Account is overdrawn.  (Mot. 7–8; Roberson Decl. ¶¶ 15, 17.)  Plaintiff adequately supports these figures with declaration testimony from Nicole Roberson, the Commercial Resolution Officer for Plaintiff, who has personal knowledge of the established facts.  (*See* Roberson Decl. ¶ 1.)  Further, an award including prejudgment interest is appropriate based on these contract claims.  Cal. Civ. Code § 3287(a) (providing for prejudgment interest as damages on liquidated contract claims). Therefore, the Court finds that Plaintiff demonstrates entitlement to the total amount of **$122,575.79** in principal, interest, and late fees for both breaches.

### 2. Attorneys' Fees and Costs

Plaintiff also seeks to recover its attorneys' fees and costs pursuant to the Business Loan Agreement, Promissory Note, and West Side Account deposit agreement. (Mot. 11–12; Roberson Decl. ¶¶ 5, 15; Grant Decl. ¶ 7.)

In the Central District, attorneys' fees awarded on default judgment are calculated according to the fee schedule provided in Local Rule 55-3. C.D. Cal. L.R. 55-3. However, that rule provides that "[a]n attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment," as Plaintiff's counsel has done here, (Mot. 12), and the Court "shall hear the request and render judgment for such fee as the Court may deem reasonable," C.D. Cal. L.R. 55-3.

To calculate a reasonable fee, "courts in the Ninth Circuit use the two-step 'lodestar method.'" *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024). A court first multiplies "the number of hours an attorney reasonably expended on the prevailing party's case" with the attorneys' "reasonable hourly rate." *Id.* Once the lodestar figure is determined, the court may adjust the figure based on a variety of factors. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 430 n.3 (1983)). The lodestar figure is presumptively reasonable, and it should therefore be adjusted only in "rare" and "exceptional" cases. *Edmo*, 97 F.4th at 1168. The fee applicant bears the "burden of showing that the claimed rate and number of hours are reasonable." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

The Business Loan Agreement, all guaranties, and the West Side Account deposit agreement each obligate Defendants to pay Plaintiff's attorneys' fees and costs incurred to enforce the agreements. (BLA 5; Roberson Decl. Exs. B ("Promissory Note") 2, C ("LOC Guaranties") 2–3, F ("Deposit Account Agreement") 36, Dkt. Nos. 21-3, 21-4, 21-7.) Thus, Plaintiff is entitled to recover attorneys' fees and costs in this action as a result of Defendants' breaches. Cal. Civ. Code § 1717(a).

Plaintiff's counsel, Jeff Grant, submits declaration testimony and attorney invoices supporting his requested rate and hours expended. (*See* Grant Decl. ¶ 7, Ex. C ("Invoices"), Dkt. No. 21-13.)   Grant requests an hourly rate of $510, which he discounts from his market hourly rate of $910. (*Id.* ¶ 8.)   Judicially noticeable public records reflect that Grant has been licensed in California for twenty-four years and has been recognized for his work in business and intellectual property litigation. Fed. R. Evid. 201(b), (c)(1); *see* The State Bar of California, Attorney Profile Jeff Grant, https://apps.calbar.ca.gov/attorney/Licensee/Detail/218974 (last visited May 1, 2026); Fox Rothschild, Biography Jeff H. Grant, https://www.foxrothschild.com/jeff-h-grant (last visited May 1, 2026).   Based on the Court's own experience and Grant's submissions in this case, $510 is an eminently reasonable rate for an attorney of Grant's skill and proficiency.

Plaintiff seeks to recover for a total of 32.2 hours Grant expended as the sole attorney prosecuting the action. (Grant Decl. ¶ 9 (requesting 15 hours for the motion, discounted from 20 hours expended); Invoices (tallying 17.2 pre-motion hours).) Having reviewed the Invoices and the precision of Grant's filings in this case, the Court finds the hours requested were reasonably and efficiently expended and should be awarded in full.

Finally, Plaintiff seeks to recover its litigation expenses incurred in this case, in the amount of $780.20.   The Court has reviewed the Invoices and finds the requested costs recoverable and reasonable.

Multiplying Grant's reasonable rate of $510 and the reasonably expended 32.2 hours results in a total fee award of $16,422.   Plaintiff does not request a multiplier, and the Court does not apply one.   Thus, together with $780.20 in costs, Plaintiff is entitled to recover **$17,202.20** in attorneys' fees and costs from Defendants.

### 3.   *Summary of Relief*

In summary, Plaintiff shall recover from Defendants $122,575.79 in principal, interest, and fees, and $17,202.20 in attorneys' fees and costs, for a total of **$139,777.99**.

Specifically, all Defendants are jointly and severally liable to Plaintiff for $109,767.99, which represents damages, interest, and attorneys' fees and costs resulting from Defendants' breach of the LOC. West Side and Hernandez are jointly and severally liable to Plaintiff for $30,010, which represents damages resulting from the overdraft and breach of the West Side Account deposit agreement.

## V.   CONCLUSION

For the reasons above, the Court **GRANTS** Plaintiff's motion for entry of default judgment, and awards Plaintiff **$139,777.99**. (Dkt. No. 21.) The Court will issue judgment.

**IT IS SO ORDERED.**

May 4, 2026

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

11